NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GRIEG MOORE, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 06-6097 (JAP) |
| v. | : | |
| BLOCKBUSTER, INC., et al., | : | **OPINION** |
| Defendant. | : | |

PISANO, District Judge:

      Plaintiff Grieg Moore brings the instant action against Blockbuster, Inc. ("Blockbuster"), his former employer, alleging that he was improperly discharged in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Before the Court are Blockbuster's motion for summary judgment and Moore's motion for summary judgment on liability only. Oral argument on both motions was held on March 25, 2009. For the reasons that follow, Moore's motion for summary judgment is denied and summary judgment is awarded to Blockbuster.

I.  **Background**[1]

The undisputed facts are as follows:

Plaintiff Grieg Moore was hired by Defendant Blockbuster as a Regional Loss Prevention Manager in April 2000. (Compl. ¶ 15.) Moore is also a Master Sergeant in the United States Air Force and a member of the New Jersey Air National Guard, (Certification of Daniel S. Sweetser, Esq. ("Sweetster Certif."), Ex. A), and after the events of September 11, 2001, Moore was called to active duty and took various military leaves over the ensuing four years. (*Id.*)

In his position as Regional Loss Prevention Manager ("RLPM"), Moore was responsible for loss prevention issues in his regions, though the regions to which he was assigned changed during his employment. Every Blockbuster RLPM was required to designate a "home office" at a store within his or her region, as well as attend weekly meetings with the Regional Director of Operations' staff for the manager's region. (Certification of Joseph A. Nuccio ("Nuccio Certif."), Ex. C at 43:3-44:23.) In addition, RLPMs were required to be generally available during weekend and night hours in order to respond to emergency situations at stores within his or her region. (*Id.*) Therefore, Blockbuster preferred that its RLPMs reside within or nearby the region for which they were responsible. (Nuccio Certif., Ex. B at 76:1-78:15.) When Moore

---

[1] Under Local Civil Rule 56.1, where the non-movant fails to respond to an allegation contained in the movant's statement of undisputed material facts (the "56.1 Statement"), such allegations are deemed admitted by the non-movant. *See, e.g., Sampson v. Ctr. for Family Guidance*, 2007 U.S. Dist. LEXIS 60749, *1 n.1 (D.N.J. Aug. 16, 2007) (where plaintiff did not file a 56.1 Statement, "all facts contained in [d]efendants' [56.1 Statement] will be deemed admitted if they are supported by evidence and not contradicted by [p]laintiff's opposing evidence"). Plaintiff Moore's counter-statement of material facts consists of three paragraphs relating exclusively to events that took place in 2004. Accordingly, post-2004 facts in Defendant's 56.1 Statement that are not rebutted by Moore's 56.1 Statement for his summary judgment motion are deemed admitted.

commenced his employment at Blockbuster in April 2000, he was responsible for Region N08, which was comprised of most of the state of New Jersey. (Nuccio Certif., Ex. A at 57:1-14.) At that time, Moore resided in Toms River, New Jersey.

Moore informed Blockbuster that he had been called to active duty by the New Jersey Air Force National Guard and he went on military leave from Blockbuster on September 15, 2001. (Nuccio Certif., Ex. A at 83:22-25.) During his leave, Moore remained in contact with his colleagues and supervisors at Blockbuster, and thanked them for their support while he was away. (*Id.*) He remained on leave through September 31, 2003 and returned to work at Blockbuster in October. (Nuccio Certif., Ex. A at 83:22-25.) After his return, and after he made a request pursuant to USERRA, Moore was given a 6% raise from his previous salary to represent the two pay raises he would have received but for his military service. (Nuccio Certif., Ex. D at 28:1-16.)

Blockbuster had undergone several operational changes during Moore's absence. Specifically, Blockbuster had downsized its Loss Prevention department and had terminated several RLPMs. (Nuccio Certif., Ex. A at 61:13-21, 63:14-64, 70:12-71:9.) Due to these terminations, remaining RLPMs assumed additional regions so as to leave no region uncovered. (*Id.*) Therefore, when Moore returned to Blockbuster in October 2003, he assumed responsibility for Region N04, consisting of stores in northern New Jersey, Connecticut, southern Massachusetts, and upstate New York. (*Id.* at 59:19-60:17, 61:8-12, 73:15-23.) This new responsibility was in addition to his coverage of Region N08. (*Id.*) Moore was reimbursed for his travel expenses associated with his commute from Toms River, New Jersey to N04's regional office in Middletown, New York, including hotel room stays, meals, and gas expenses. (*Id.* at

71:24-72:16.)  There is no evidence that Moore lodged any complaints or reservations about his new role in 2003.

Moore informed Blockbuster in August 2004 that he had again been called to active duty. Moore left for duty on September 8, 2004 and returned to Blockbuster approximately three months later.  While Moore was away on leave, other RLPMs covered his territories.  (Nuccio Certif., Ex. A at 91:6-25.)

Pursuant to corporate level directives, Blockbuster underwent additional operational realignments, beginning during Moore's leave in 2004 and ultimately concluding in January or February 2005.  Though Blockbuster stores in New Jersey remained, the New Jersey region was absorbed into the Manhattan region (Region N06) and, consequently, there was no RLPM for New Jersey.  (Nuccio Certif., Ex. B, 20:2-21:17.)  Instead, David Cohen, the RLPM who had covered Region N06 prior to the realignment efforts, assumed RLPM responsibilities for the New Jersey stores at some time between September and December of 2004.  (*Id.* at 21:2-16.)[2]  As a result of the realignment, a number of Blockbuster Region N08 employees were terminated, including the Regional Director of Operations for N08.  (*Id.* at 35:4-16.)  Therefore, when Moore returned from leave in December 2004, he remained the RLPM for Region N04, but was no longer responsible for any of the New Jersey stores from the eliminated region.  (*Id.* at 19:10-20:24.)[3]

---

[2]   Plaintiff Moore seems to believe that David Cohen assumed responsibility for Region N08, and that there was no realignment.  However, he has failed to offer any evidence contesting Blockbuster's position that the region itself was eliminated.

[3]   In Moore's deposition, he testified that his direct supervisor, Tim Manos, informed Moore that he would be assigned to N04 because "Ken Crivello[, a Regional Director of Operations,] doesn't want [Moore] working with him in New Jersey because [Moore] worked

Moore commuted roughly two and a half hours from his residence in Toms River to the N04 home office in Middletown, New York from December 2004 through April 2005. Sometime in April 2005, Blockbuster (it is unclear precisely who) communicated to Moore that he would need to relocate to an area closer to his region or else resign and take a severance package, to which he was entitled because Region N08 had been eliminated. (Nuccio Certif., Ex. C at 46:12-20.) On April 18, 2005, Moore informed Cynthia Malizia, Blockbuster's Director of Loss Prevention, that he would relocate to a location closer to the region. (Sweetster Certif., Ex. R at 132:2-8.) Malizia gave Moore the telephone number for the relocation company used by Blockbuster employees and instructed Moore that his relocation should be completed by June 6, 2005. (*Id.* at 46:5-8.)

Malizia checked in with Moore on May 16, 2005 to see how Moore's relocation efforts were proceeding. (*Id.* at 69:15-70:3.) Moore responded that he had settled on a city he would like to live in, but made no reference to contact with the relocation company. (*Id.* at 69:25-70:3.) On May 25, 2005, over a month after Moore had agreed to a June 6 relocation deadline and had been given the relocation company's phone number, Moore alerted Malizia that he had contacted the relocation company but that Blockbuster had apparently failed to give the company proper

---

with him in New York and [Moore] came and went, came and went, and he wants someone that's going to be there 24/7." (Supplemental Certification of Daniel S. Sweetster, Esq. ("Sweetster Supp."), Ex. A at 107:8-22.) Moore testified that Crivello had never discussed this issue with him directly. (*Id.* at 107:20-25.) However, Moore had covered Region N04 since October 2003. Therefore, Moore's claim that he received a "new" assignment is belied by the fact that his prior responsibilities were curtailed by virtue of the elimination of the New Jersey region (N08).

authorization for Moore's relocation.[4] (Sweetster Certif., Ex. B.)  Malizia promptly followed up with the relocation company but appears to have not submitted additional completed paperwork on Moore's behalf until June 14, 2005.  (*Id.*; Nuccio Certif., Ex. C at 41:1-42:17.)

Malizia checked in with Moore on May 31, 2005 to again inquire about the progress of Moore's relocation.  (Sweetster Certif., Ex. B.)  Moore responded ten days later, on June 10, 2005, informing Malizia that he intended to spend the week of July 4 working on the relocation process and that he had "begun the process of looking at the different townships and counties around the Region [N04] office," even though he had earlier informed Blockbuster that he had already settled on a city.  (*Id.*)   In response, Malizia extended Moore's relocation deadline to July 31, 2005.  (Sweetster Certif., Ex. T.)  In a pair of emails on June 14 and 17, Moore communicated to Malizia his concerns about relocating by the end of July, given his planned personal days, scheduled two weeks of vacation, two week military training, and his regular work obligations.  (Def.'s 56.1 Statement, Exs. 23, 24.)  Moore also represented to Malizia that he understood "[t]hat [Moore was] to [r]elocate into[his] market by the drop dead date of 7/31/05." (Def.'s 56.1 Statement, Ex. 24.)  Moore added,

> "I understand you stated that you wanted me to move by the end of
> June, but that has been extended to July and your expectation is that
> if I am not living in my market by that date that I will no longer
> have a job.  There will be no extension past that date for any reason.
> The reason for this relocation is because the direction of the
> company is for each person in the company to live within the area

---

[4]   Though the parties have identified May 25, 2005 as the date on which these communications took place, Plaintiff Moore has submitted an email from Malizia, dated May 24, 2005, which states, "Can you please check for me, Grieg Moore is saying that he has never been contact [*sic*] by our relocation company and they have no authorization for his relocation.  Let me know what you find out please." (Sweetster Certif., Ex. B.)  It therefore appears that Moore informed Malizia of his difficulties with the relocation company on or before May 24, 2005.

that they support and to save time on expenses.
(*Id.*)  On June 24, Moore sent an email to Susan Baker, Blockbuster's Vice President of Loss Prevention, and Amado Hernandez, the Human Resources Director, to complain that he believed his relocation was being handled improperly.  Specifically, he informed Baker and Hernandez that he felt the July 31 deadline was unfair because of the delay with the relocation company.  (Sweetster Certif., Ex. C.)  Moore also alleged that he had been asked to resign twice (though he failed to mention who made this request), and that given his performance over the past year, he did not understand why he was being asked to resign.  (*Id.*)  Moore at no point made any reference to his military service or his suspicion that his military leaves had any bearing whatsoever on his employment situation.  Though Moore claimed that he received no response to this email (Pl.'s 56.1 Statement, ¶ 12), his own evidence demonstrates that Baker responded on June 30 and confirmed that the relocation company indeed had Moore's correct information. (Sweetster Certif., Ex. D.)

      Moore commenced communications with the relocation company in July but did not put forth any effort towards relocating during his July 4 week vacation, as he had previously represented he would do.  At his deposition, Moore gave no reason for his failure to do so. (Nuccio Certif., Ex. A at 160:18-162:24.)  Moore contacted the relocation company on July 8, 2005 to inform them that he would be delaying his relocation, as he had been ordered to active duty and would "be gone all of July and probably August as well." (Sweetster Certif., Ex. E.) Moore finally faxed a relocation agreement to the relocation company on August 16.  (Sweetster Certif., Ex. K.)

      The email exchanges continued throughout the late summer of 2005.  While on military

leave, Moore emailed Malizia on July 25, stating that though he returned from leave on July 29, he would not be returning to work until August 8 because he would be taking a vacation during the first week of August. (Sweetster Certif., Ex. H.) Malizia again extended Moore's relocation deadline, this time to September 15, 2005. (Sweetster Certif., Ex. I.) Moore expressed that he did not consider this to be a "realistic" deadline because he had another military leave planned for August 20 through September 6, 2005. (*Id.*) Subsequent communications in August between Moore and Blockbuster reiterated the availability of a severance package if Moore chose to not go through with the relocation. However, Moore rejected the severance package in an August 25 email, where, for the first time, he alleged that Blockbuster was retaliating against him for his military service. (Def.'s 56.1 Statement, Ex. 29.)

Moore's military leave was extended when he received orders that he would be deployed overseas through the end of October 2005. (Sweetster Certif., Ex. L.) The relocation deadline was extended for a fourth time, to November 21, 2005. (Def.'s 56.1 Statement ¶ 59.) Moore returned from leave on October 23, but went out on another military assignment on November 11, 2005. (Def.'s 56.1 Statement, Ex. 34.) Moore did not return to work during the intervening three week period. However, he informed Malizia on November 8 that his orders extended through December 31, 2005. (*Id.*) Blockbuster provided Moore with a fifth relocation deadline, giving him until January 3, 2006 to have completed the relocation, after Moore wrote to Blockbuster on December 18 to request vacation time from December 27 through January 1. (Def.'s 56.1 Statement, Ex. 37.) Moore's vacation request was granted by Blockbuster. (*Id.*)

Moore returned to Blockbuster on January 3, 2006, having again failed to relocate in accordance with Blockbuster's directive. Blockbuster determined that because of this failure,

Moore should be terminated. (Nuccio Certif., Ex. B at 9:8-11:17.) Moore had an in person meeting with a member of the Human Resources staff that day and was told that he was no longer a Blockbuster employee. (Pl.'s 56.1 Statement ¶ 30; Def.'s 56.1 Statement ¶ 66.) During oral argument, counsel represented that Moore has been employed by the military since shortly after his termination.

Moore filed the instant Complaint with this Court on December 19, 2006. Though Moore's Complaint sought relief on four separate causes of action, he now limits his claims to his wrongful discharge action under USERRA, and voluntarily dismisses the remainder of his action. (Pl.'s Opp'n Br. at 1.)

**II.     Analysis**

    **A.     Summary Judgment Standard of Review**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest

on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, and not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but rather determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.     Discussion**

USERRA was enacted by Congress in 1994 as part of a series of laws designed to protect military personnel's civilian employment and reemployment rights who are absent from their civilian careers due to military service. *See* 38 U.S.C. §4301(a) (setting forth the three primary purposes of USERRA). Specifically, § 4316(c) provides: "A person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause – . . . within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days."  The parties do not dispute that Moore was "reemployed by an employer under this chapter" after a previous period of service exceeding 180 days, or that he was discharged within one year after the date of his reemployment. Instead, the parties dispute whether Moore was discharged "for cause" within the meaning of § 4316(c). Moore argues that Blockbuster did not have cause to terminate his

Case 3:06-cv-06097-JAP-TJB   Document 43   Filed 03/31/09   Page 11 of 14 PageID: 1159

employment on January 3, 2006. Blockbuster contends that Moore's failure to relocate over a nine month period (from April 2005 through December 2005), notwithstanding his representations to Blockbuster that his relocation efforts were ongoing, constitutes cause for termination. The Court holds that Blockbuster acted reasonably in terminating Moore's employment for the reasons that follow.

No reported decision from this District or the Third Circuit has defined "cause" in the context of USERRA's § 4316(c). However, the regulations interpreting this section of USERRA provide that, "[i]n a discharge action based on conduct, the employer bears the burden of proving that it is reasonable to discharge the employee for the conduct in question, and that he or she had notice, which was express or can be fairly implied, that the conduct would constitute cause for discharge." 20 C.F.R. § 1002.248(a). Courts confronting the issue have held that reasonableness is the touchstone of whether a termination is for cause under the statute. *See, e.g., Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006); *Johnson v. Michigan Claim Serv., Inc.*, 471 F. Supp. 2d 967 (D. Minn. 2007); *Ferguson v. Walker*, 397 F. Supp. 2d 964 (C.D. Ill. 2005); *Duarte v. Agilent Techs., Inc.*, 366 F. Supp. 2d 1039 (D. Colo. 2005). Accordingly, "it is difficult for employers to achieve summary judgment on claims under § 4316(c)." *Francis*, 452 F.3d at 299. However, summary judgment has been awarded to employers where the undisputed evidence demonstrates that the employee had notice that certain conduct would be cause for discharge and where the employee persisted in such conduct nonetheless. *See, e.g., id.* at 309 (affirming award of summary judgment to employer where undisputed evidence demonstrated a "systematic history of professional misconduct and a refusal to correct that misconduct" thus constituting sufficient cause for the employee's discharge).

-11-

Moore contends that Blockbuster failed to inform him that failure to relocate would result in the termination of his employment on January 6, 2006, that Blockbuster's stated "cause" for dismissal was unreasonable under the circumstances, and that either of these reasons independently suffices to defeat Blockbuster's summary judgment motion.[5]  Blockbuster argues that Moore had "fair notice" that his failure to relocate could be grounds for discharge, and that explicit notice is not required under USERRA.  Further, Blockbuster maintains that it repeatedly instructed Moore to relocate, and that despite his affirmative representations that he had agreed to do so, Moore "failed to honor that commitment" (Def.'s Opp'n Br. at 15) and this failure constituted gross insubordination justifying his termination.

The Court concludes Moore was on notice that his repeated failure to relocate or to put forth any effort towards relocating to his new region provided grounds for discharge.  Moore explicitly conceded in his deposition, and in numerous emails, that he understood that he risked discharge by failing to relocate by the various deadlines imposed over the nine-month period by Blockbuster.  The Court considers Moore to have received "fair notice" that his employment would be terminated if he again failed to relocate.  The record is rife with instances in which Moore was informed, or stated himself, that if he failed to relocate, he would be terminated.  As late as December 8, 2005, Blockbuster made clear its expectation that Moore would have

---

[5]  Moore also belatedly claims that he was excused from relocating during the three weeks between late October and mid-November when he was off-duty because he did not believe he still had a job at Blockbuster.  However, Moore has raised no evidentiary basis for this conclusion, nor did he raise this assertion during his two-day deposition.  Further, even if the Court overlooks Moore's inaction during the three week period, the undisputed facts demonstrate that Moore failed to relocate over a six-month period during which he requested and took two vacations.  As such conduct would provide cause for termination, the Court disregards Moore's excuse.

completed the relocation process "by [Moore's] return date." (Sweetster Certif., Ex. Q.)  Given Blockbuster's clear directive regarding the consequences of his failure to adhere to previous relocation deadlines, the fact that Blockbuster did not expressly condition his continued employment on Moore's relocation on the fourth particular occasion is not material or fatal to Blockbuster's motion.  Accordingly, Moore's claim that he did not receive the "fair notice" required under USERRA is entirely without merit.

      Next, the Court must consider whether the decision to terminate Moore on January 3, 2006 was reasonable under the circumstances.  Put another way, summary judgment must be denied as to Blockbuster's motion if it fails to establish that sufficient cause existed to terminate Moore based on his repeated failure to relocate.  This Court holds that no reasonable juror could deny that Blockbuster had cause to terminate Moore due to his failure to relocate.  Moore received no less than *five* separate relocation deadlines over a nine-month period but failed to comply with a single one.  By his own admission, Moore never definitively settled on a location or looked at any sale or rental properties, and communicated to the relocation company that he did not intend to sell his home in New Jersey. (Nuccio Certif., Ex. A at 135:17-24, 139:7, 142:11-19.)  The undisputed evidence demonstrates that the *only* concrete step Moore took towards relocation was faxing a relocation agreement.  Moore rests on the delay with the relocation company as the sole reason for his failure to relocate, and neglects the possibility that he could have independently conducted research which would have assisted the relocation process.  Further, Moore requested and took no less than three separate vacations during that nine month period.  Given the serious consequences of not relocating, Moore had ample time during those vacations to make substantial efforts towards relocation.  Other than the minimal step of

faxing the relocation agreement, Moore's unwillingness to relocate or to explore alternative arrangements, such as temporary corporate housing, despite his knowledge that failure to relocate jeopardized his employment, makes clear that Blockbuster fired Moore for not relocating some nine months after the request was first made of him.

**III.   Conclusion**

For the reasons described above, summary judgment is thus denied as to Plaintiff Moore's motion for summary judgment, and granted as to Defendant Blockbuster's motion for summary judgment.


Dated: March 31, 2009